```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


GARY CHRISTY,                        :    CIVIL ACTION
                                     :    NO. 11-5045
         Plaintiff,                  :
                                     :
    v.                               :
                                     :
EOS CCA,                             :
                                     :
         Defendant.                  :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                             November 27, 2012

        Gary Christy (Plaintiff) brings this action under the Fair Debt Collections Practices Act (FDCPA) against EOS CCA (Defendant). Defendant moved for summary judgment. ECF No. 13. For the reasons that follow, the Court will grant Defendant's Motion for Summary Judgment.

I.   **BACKGROUND**[1]

        Plaintiff is a resident of Willow Grove, Pennsylvania, and works as a horticulturalist manager at a local country club. See Christy Dep. 8:22-9:17, ECF No. 13, Ex. D. He lives with his wife, Tracey Christy, and adult son, also named Gary Christy. Id. at 10:8-17. Defendant is a debt collection company with

---

[1] The Court states the following facts in the light most favorable to Plaintiff and draws all reasonable inferences in Plaintiff's favor.

corporate headquarters located in Norwell, Massachusetts, performing collection activity for approximately seven million accounts, totaling around $6.8 billion in value. See Burns Dep. 26:7-9, ECF. No. 19, Ex. B.

Plaintiff claims Defendant violated the FDCPA because, on June 14, 2011, Defendant sent a letter which was marked "confidential," addressed to Gary Christy, and sought payment of an $84.14 delinquent AT&T Mobility debt to the law firm of Kimmel & Silverman, P.C., where Tracy Christy, Plaintiff's wife, works. Compl. ¶¶ 19-20, ECF. No. 1; see id. Ex. A. On June 21, 2011, the firm received Defendant's letter and its mail clerk, Sandy Lorandeau, inadvertently opened the letter but did not read it; instead, she forwarded it to Defendant's wife. Lorandeau Dep. 10:20-11:2, ECF. No. 13, Ex. C. In reality, the letter was intended for Plaintiff's son, the actual debtor of the account, also named Gary Christy. See Christy Dep. 45:9-46:20.[2] After failing to locate Plaintiff's son at the address provided by AT&T Mobility, Defendant obtained through LexisNexis

---

[2] Although Plaintiff insists he goes by "Gary Christy" while his son's name is "Gary Christy, Jr.," his son entered into the agreement with AT&T Mobility (which information Defendant relied upon in performing its debt-collection duties, Burns Dep. 29:1-4) using the name "Gary Christy," not "Gary Christy, Jr." Christy Dep. 29:23-30:4; Mot. Ex. 5., ECF No. 13. Also, Plaintiff refers to himself as "Gary Christy, Sr.," not "Gary Christy," during "the signing of any bills or checks" and when "doing an application for credit." Christy Dep. 7:14-21.

an automatically generated new address, that of Kimmel & Silverman, at which to contact him. Burns Dep. 33:7-34:21. Plaintiff does not owe the debt. See id. Plaintiff did not actually read the letter until he began consulting with counsel to pursue the matter at hand. Id. at 48:12-24. It was not until after "th[e] case became more relevant" that Plaintiff discovered that the letter related to "his son's cell phone bill." Id. at 14:9-13.

Plaintiff claims that Ms. Lorandeau's opening of the debt-collection letter at Kimmel & Silverman was "highly embarrassing," because he believed the letter was addressed to him, and filed suit claiming a violation of the FDCPA. Compl. ¶ 23.

## II. PROCEDURAL HISTORY

On August 5, 2011, Plaintiff filed a Complaint that asserts the following claims against Defendant: (1) communicating with third parties in connection with the collection of a debt in violation of 15 U.S.C. § 1692c(b); (2) generally harassing Plaintiff in connection with the collection of a debt in violation of § 1692d; (3) generally using false, deceptive, or misleading representations or means in connection with the collection of a debt in violation of § 1692e; and (4) generally using unfair and unconscionable means

3

against Plaintiff in collecting or attempting to collect a debt in violation of § 1692f. Defendant responded, claiming that it did not violate the FDCPA. Answer ¶¶ 28(a)-(f), ECF No. 3.[3]

On March 19, 2012, Defendant filed the instant Motion for Summary Judgment. Def.'s Mot. for Summ. J., ECF No. 13. Plaintiff responded. Ps.'s Resp., ECF No. 20. The matter is now ripe for disposition.

## III. LEGAL STANDARD

Summary judgment is appropriate if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A

---

[3] Defendant further asserted ten affirmative defenses. Id. at 8-11. Plaintiff, in response, moved to strike Defendant's first, third, sixth, seventh, eighth, ninth, and tenth affirmative defenses on October 31, 2011. P'.'s Mot. to Strike, ECF No. 6. On November 14, 2011, Defendant opposed Plaintiff's motion. Def.'s Mem. in Opp'n, ECF No. 8. The Court struck Defendant's third and sixth affirmative defenses and denied the motion as to the first, seventh, eighth, ninth, and tenth affirmative defenses. Order, March 9, 2012, ECF No. 12. None of these defenses has bearing on or upon the Court's decision to grant Defendant's Motion for Summary Judgment.

4

fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court will view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

**IV. DISCUSSION**

Under the FDCPA, a debt collector may not engage in abusive practices in connection with the collection of a debt. See 15 U.S.C.A. § 1692(e) (West 2012).[4] The statute provides a

---

[4] Such practices "contribute to the number of personal bankruptcies, to marriage instability, to the loss of jobs, and to invasions of individual privacy." Id. § 1692(a). Congress stated that the FDCPA's purpose was to "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to

private cause of action against noncompliant debt collectors. Id. § 1691k. The alleged abusive debt practices in this case include improper communication with a third party concerning the collection of a debt; harassment in connection with the collection of a debt; use of false, deceptive, or otherwise misleading representations concerning a debt collection; and use of unfair and unconscionable means in connection with a debt collection.[5]

The FDCPA is a remedial statute and the Court "construe[s] its language broadly, so as to effect its purpose." Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006). "In order to give effect to the Act's intent to 'protect[] the gullible as well as the shrewd,' courts have analyzed the statutory requirements 'from the perspective of the least sophisticated debtor.'" Campuzano-Burgos v. Midland Credit Mgmt., Inc., 550 F.3d 294, 298 (3d Cir. 2008) (alteration in original) (citations omitted). The least sophisticated debtor standard is a low standard and "is consistent with the norms that courts have traditionally applied in consumer-protection

---

promote consistent State action to protect consumers against debt collection abuses." Id. § 1692(e).

[5]   The Court notes that 15 U.S.C. §§ 1692e-1692f include subsections that prohibit specific types of conduct, although Plaintiff relies on none of these subsections and points to no specific conduct aside from the mailing of the letter itself to show a violation of the FDCPA.

law." Brown, 464 F.3d at 453. For example, "a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor." Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008) (quoting Wilson v. Quadramed, 225 F.3d 350, 354 (3d Cir. 2000)). Accordingly, "any lender-debtor communications potentially giving rise to claims under the FDCPA . . . should be analyzed from the perspective of the least sophisticated debtor." Brown, 464 F.3d at 454.

Although the least sophisticated debtor standard is very low, it nonetheless "safeguards bill-collectors from liability for 'bizarre or idiosyncratic interpretations of collection notice' by preserving at least a modicum of reasonableness, as well as 'presuming a basic level of understanding and willingness to read with care [on the part of the recipient].'" Campuzano-Burgos, 550 F.3d at 299 (alteration in original) (quoting Wilson, 225 F.3d at 354-55). The statute does not protect "the willfully blind or non-observant." Id. "Even the least sophisticated debtor is bound to read collection notices in their entirety." Id. (citing Fed. Home Loan Mortg. Corp. v. Lamar, 503 F.3d 504, 510 (6th Cir.2007)). Moreover, the FDCPA is "not intended to shield even unsophisticated consumers from the embarrassment and inconvenience which are the natural consequences of a debt collection process." Higgins v. Capitol

7

Credit Servs., Inc., 762 F.Supp. 1128, 1135 (D. Del. 1991) (citation omitted). This is because Congress enacted the FDCPA "to protect consumers . . . without imposing unnecessary restrictions on ethical debt collectors." Id. (quoting S. Rep. No. 95-382, at 1-2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696).

> 1. Communicating With Third Parties in Violation of § 1692c(b)

Defendant argues that Plaintiff lacks standing to sue under § 1692c(b), which prohibits unauthorized disclosures to third parties in connection with the collection of a debt, because he is not the debtor and does not fall under the broader definition of "consumer" as set forth in §§ 1692a(3) and 1692c(d). Alternatively, Defendant argues that, even if the Court determines that Plaintiff has standing to sue under this disclosure statute, he would still fail to assert a viable claim. The Court finds that Plaintiff does not have standing to bring a claim under § 1692c(b).

Generally, the FDCPA grants a cause of action to "any person" wronged by a debt collector. 15 U.S.C.A. § 1692k(a). "Federal courts interpret Section 1692k(a) as a broad grant available to persons who are not obligated or allegedly obligated to pay the debt that the defendant sought to collect." Wenrich v. Robert E. Cole, P.C., No. 00-2588, 2001 WL 4994, at

8

\*3 (E.D. Pa. Dec. 22, 2000). However, "[u]nder certain sections of the FDCPA, a plaintiff must be a 'consumer' as defined in the FDCPA to have a cause of action because those sections define violations in terms of conduct directed toward a 'consumer.'" Id. at \*4. The FDCPA defines a consumer as "any natural person obligated or allegedly obligated to pay any debt," 15 U.S.C.A. § 1692a(3), and § 1692c broadens that definition to include a debtor's spouse, a minor (but not adult) debtor's parents, a guardian, an executor, or an administrator, Id. § 1692c(d).

Courts in this district and elsewhere have required a plaintiff bringing claims under certain FDCPA subsections, including § 1692c(b), to be a "consumer" as defined in § 1692c(d). E.g., Shand-Pistilli v. Prof'l Account Servs., Inc., No. 10-1808, 2010 WL 2978029, at \*3 n.1 (E.D. Pa. July 26, 2010) ("The FDCPA permits debt collectors to communicate with the consumer or the consumer's spouse."); Cole v. Toll, No. 07-590, 2007 WL 4105382, at \*7 (E.D. Pa. Nov. 16, 2007) (determining that plaintiffs did not have standing to sue under § 1692e(11), because they were not consumers as defined in §§ 1692a(3) and 1692c(d)); Wenrich, 2001 WL 4994, at \*4 (finding that plaintiffs lacked standing to sue under §§ 1692e(11) and 1692g); see also Montgomery v. Huntington Bank, 346 F.3d 693, 696-97 (6th Cir. 2003) (quoting Wright v. Fin. Serv. of Norwalk, 22 F.3d at 649 n.1) ("'Only a "consumer" has standing to sue for violations

9

under 15 U.S.C. § 1692c.'"); Bank v. Pentagroup Fin., L.L.C., No. 08-5293, 2009 WL 1606420, at *12-13 (E.D.N.Y. June 9, 2009) (same); Sibersky v. Borah, Goldstein, Altschuler & Schwartz, P.C., No. 99-3227, 2000 WL 1448635, at *5 (S.D.N.Y. Sept. 28, 2000) ("[C]ertain sections of the FDCPA are violated only by certain conduct toward a 'consumer.'").

Here, Plaintiff does not qualify as a consumer as defined in § 1692a(3) and § 1692c(d). He is the father of an adult, not minor, debtor. Christy Dep. 8:14. He is not obligated on the AT&T Mobility debt. Id. at 16:19-20. Also, he is not the debtor's spouse, guardian, executor, or administrator. Because he is not a consumer as defined by the FDCPA, he does not have standing to bring a § 1692c(b) claim and summary judgment must be granted in favor of Defendant on this issue.

Plaintiff provides two arguments to support his position that he has standing to assert a claim under § 1692c(b). Both are unavailing. First, despite conceding that he did not incur the debt, he argues that he reasonably believed the debt was his because the letter was addressed to him, "Gary Christy," not his son, "Gary Christy, Jr." But the FDCPA definition of "consumer" does not include such a reasonableness standard and Plaintiff cites no case law in support of his argument. Indeed, the plain language of the statute prevents the

10

Court from expanding the bounds of the FDCPA to include this broader definition.[6]

Second, Plaintiff relies on a single, out-of-circuit, federal district court case to show that a non-consumer also has standing to bring a § 1692c(b) claim against a debt collector. Thomas v. Consumer Adjustment Co., 579 F. Supp. 2d 1290 (E.D. Mo. 2008). Although courts in this district have not followed the Eastern District of Missouri in permitting non-consumers to bring § 1692c(b) claims, even if the Court were to do so, Plaintiff would not qualify under Thomas's reasoning. In that case, the court granted standing to a debtor's girlfriend because the debt collector's employee, in attempting to reach the plaintiff by telephone, spoke directly with the girlfriend. Id. at 1292. The employee attempted to create urgency by falsely

---

[6] Even if the Court were to adopt this standard, it is clear from the evidence that Plaintiff did not reasonably believe the debt to be his. Contrary to his assertion that his son uses a "Jr." suffix and he that uses none, Plaintiff admits that he refers to himself as "Gary Christy, Sr." when handling his bills and applying for credit. Christy Dep. 7:14-21. Thus, he would reasonably be expected to understand that bills addressed to him would include that same suffix, whereas bills addressed to his son would not. Furthermore, at the time the bill arrived at his spouse's place of employment, Plaintiff had previously brought a suit under the FDCPA in this Court against another debt collector who confused Plaintiff with his son, placing himself on notice of the issue. Compl., Christy v. Nat'l Recovery Servs., L.L.C., No. 11-923, ECF No. 1. It is not reasonable for Plaintiff to believe that Defendant was seeking to collect from him given his past actions relating to bills and debt collectors.

implying that he was the debtor's brother and was experiencing an emergency, causing the girlfriend to undergo severe emotional distress. Id. at 1292. The court explained: "Though a close question, under the unique facts posed here, where the third-party alleges a direct harm and actual damages from a communication proscribed by §§ 1692b and 1692c(b), the Court finds such party has standing to sue under § 1692k." Id. at 1299 (emphasis added).

Plaintiff stands in contraposition to the girlfriend in Thomas. He is neither the consumer nor was he the third party receiving information from the debt collector. In fact, the information was transferred from Ms. Lorandeau, the legal secretary (who did not actually read the contents of the bill), to Plaintiff's wife, then verbally by phone to Plaintiff. Lorandeau Dep. 11:2, 32:13-18; Christy Dep. 48:12-49:2. Plaintiff thus is too far removed from the instant disclosure to qualify for standing even under Thomas's logic. Additionally, the third-party harm required in Thomas is non-existent here. Plaintiff claims that the mere presence of the bill at his spouse's work, which was Ms. Lorandeau erroneously opened but did not view, "was embarrassing." But this sort of embarrassment is a product of "the natural consequences of a debt collection process" and does not rise to the level of harm necessary to justify a claim under § 1692c(b). Higgins, 762 F.Supp. at 1135;

12

see also Segal v. Nat'l Action Fin. Servs., No. 8:04-2388, 2006 WL 449176, at *7 (M.D. Fla. Feb. 22, 2006) ("The act of sending one letter addressed to a consumer but sent to the wrong address does not alone appear to indicate a violation by Defendant of § 1692c(b).") In any event, Plaintiff lacks standing to pursue his § 1692c(b) claim.

        2.    Harassing Plaintiff in Violation of 15 U.S.C. § 1692d

Plaintiff does, however, have standing to assert his remaining FDCPA claims, which are governed by § 1692k. This section permits "any person" wronged by a debt to bring a cause of action under the statute. 15 U.S.C.A. § 1692k. Relying on § 1692d, Plaintiff argues that, by sending a bill addressed to him at his wife's office, Defendant "engage[d] in [] conduct the natural consequence of which is to harass, oppress, or abuse a[] person in connection with the collection of a debt." Id. § 1692d. Section 1692d provides six subsections that specify prohibited conduct. However, Plaintiff brings his claim under the general prohibition, which "enable[s] the courts, where appropriate, to proscribe other improper conduct, which is specifically not addressed." S. Rep. No. 95-382, at 4 (1977), reprinted at 1977 U.S.C.C.A.N. 1695, 1696.

Although the term "harass" is not defined in the FDCPA, the Act's legislative history sheds light on what abusive practices violate § 1692d:

> [O]bscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.

S. Rep. No. 95-382, at 2. Examples of actionable harassment in this District include repeated phone calls and threats in order to force payment of a debt, Shandi-Pistilli, 2010 WL 2978029, at *4-5; Vincent v. E.C.R. Servs., Inc., No. 06-4262, 2007 WL 81066 (E.D. Pa. Jan. 8, 2007), and referring to a debtor as a "scumbag," Frew v. Van Ru Credit Corp., No. 05-5297, 2006 WL 2261624, at *3 (E.D. Pa. Aug. 7, 2006).

These are extreme examples. Notably, § 1692d "prohibits only oppressive and outrageous conduct." Beattie v. D.M. Collections, Inc., 754 F. Supp. 383, 394 (D. Del. 1991) (citing Bieber v. Associated Collection Servs., Inc., 631 F. Supp. 1410, 1417 (D. Kan. 1986)). "[I]t would be inconsistent with the language of subsection 1692d to construe the subsection to forbid conduct that is not intended and does not naturally tend to harass, oppress or abuse." Id. (citing Wright v. Credit Bureau of Ga., Inc., 548 F. Supp. 591 (N.D. Ga. 1982)). Thus,

the FDCPA does not shield even the least sophisticated debtor where debt-collectors only "contacted the wrong individuals with regard to the debt." Id.

Here, Plaintiff has not alleged any conduct which would naturally tend to harass, oppress, or abuse. In his deposition, Plaintiff testified that the purported harassing conduct was a result of Ms. Lorandeau opening the debt collection letter at Kimmel & Silverman. Christ Dep. 46:22-47:1. But before the letter had even reached Kimmel & Silverman, Defendant took necessary steps to limit exposure to third parties and reduce potential harassment. It performed a "skip trace" to locate a valid address for Plaintiff's son, addressing the bill to the exact name on the AT&T Mobility account, and marked it "confidential." Although Ms. Lorandeau opened the letter despite this notice, she did not read the contents of the letter, making Plaintiff's harassment claim borderline frivolous. Therefore, any harm that Plaintiff might have sustained does not rise to the level required by § 1692d, and so Defendant's motion for summary judgment as to this claim will be granted.

   3. <u>Using False, Deceptive, or Misleading Representations or Means in Violation of 15 U.S.C. § 1692e</u>

Plaintiff also claims, under § 1692e, that Defendant used false, deceptive, or misleading representations or means in

15

connection with the collection of its debt. He relies on the § 1692e's general prohibition, which Congress intended to cover deceptive collection acts and practices that do not fit the specific prohibitions listed in the statute's subsections. S. Rep. 95-382, at 4. Specifically, Plaintiff claims that Defendant sent him the letter even though he did not owe the debt, and that this act alone was deceptive or misleading. However, he fails to offer any facts to support his claim aside from pointing out that Defendant failed to include "Jr." as a suffix to "Gary Christy" in its debt-collection letter so as to correctly identify Plaintiff's son as the debtor. This is insufficient to survive summary judgment.

Under the least sophisticated debtor standard, a statement is deceptive if it is subject to an interpretation or contains an implication with the capacity to deceive. "A debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate." Rosenau, 539 F.3d at 221. But even the least sophisticated debtor is "bound to read collection notices in their entirety." Campuzano-Burgos, 550 F.3d at 299.

Here, Plaintiff could not reasonably have interpreted the letter to have been addressed to him. First, he admits he refers to himself as "Gary Christy, Sr." when handling his bills and applying for credit. Christy Dep. 7:14-21. Second, Plaintiff

previously brought a suit under the FDCPA in this Court against another debt collector who confused Plaintiff with his son. Compl., Christy v. Nat'l Recovery Servs., L.L.C., No. 11-923, ECF No. 1. He was therefore on notice that debt-collection letters addressed to "Gary Christy" not relating to his own debts were likely intended for his son. Plaintiff would have to unjustifiably misinterpret the letter to be deceived or misled. Also, Defendant did not bother to read the letter itself until preparation for litigation, where he eventually confirmed that his son owed the debt. Christy Dep. 15:2-10, 48:14-49:2. Defendant clearly did not follow his obligation under the FDCPA to "read collection notices in their entirety" before bringing suit. If he had done so, he would have immediately questioned whether the letter was addressed to him.

Furthermore, Plaintiff's reliance on Velazquez v. NCO Financial Systems, Inc., No. 11-0263, 2011 WL 2135633 (E.D. Pa. May 31, 2011), is misplaced. In that case, the debt collector sought to collect from the plaintiff even though the plaintiff did not owe the debt. Id. at *1. Here, Plaintiff offers no evidence showing that Defendant made any such effort. Instead, Plaintiff bases his entire argument on the omission of a suffix. This is too thin a reed on which to hang his § 1692e claim, and therefore the Court will grant summary judgment in Defendant's favor.

### 4. Using Unfair and Unconscionable Means To Attempt To Collect a Debt in Violation of § 1692f

Defendant alleges that Plaintiff's claim under § 1692f is "deficient because it does not identify any misconduct which is distinguished from Plaintiff's claims under §§ 1692c(b), 1692d, and 1692e." Def.'s Mot for Summ. J. 15. "A complaint will be deemed deficient under [§ 1692f] if it does not identify any misconduct beyond which plaintiffs assert violate other provisions of the FDCPA." Shandi-Pistilli, 2010 WL 2978029, at *6 (quoting Foti v. NCO Fin. Sys., Inc., 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006) Plaintiff does, in fact, rely on Defendant's act of mailing the the debt-collection letter to Kimmel & Silverman and Ms. Lorandeau's act of opening the letter as the grounds for all of his claims. Because Plaintiff fails to allege other conduct that was unfair and unconscionable under § 1692f, summary judgment for Defendant is warranted.

## V. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment.